Mr. Hunter. Good morning. Thank you, Judge Duncan, and may it please the court. Public and judicial confidence in the outcome of criminal trials depends on the faith that all of the necessary procedural safeguards afforded to the accused were scrupulously honored and that the government discharged its burden in spite of those protections. The court's rulings in this case, in a constellation, undermined our confidence in that outcome in this matter for two key reasons that address one of the most sacred and fundamental aspects of the protections the accused enjoys, and that is with respect to his right to counsel. It was attacked in these rulings on both ends, both in the beginning and at the end of the line. The trial court's rulings on the motion to dismiss and its rulings on the evidentiary matters that underpinned that, that were elicited through the testimony of the co-defendant, Mr. Curry, breached the sanctity of the attorney-client relationship and gave the government valuable insight into the state of mind that Mr. Carr had during this process. As you read this record, I think that the pages scream that Mr. Carr is going to have to testify as you're reading through it. You're thinking, wow, this pharmacy was extremely sketchy. This behavior seems indefensible. Mr. Curry is patently guilty of this conduct. But there are things within the record that speak to the possibility that Mr. Carr didn't understand the nature of Mr. Curry's scheme. And so we keep asking ourselves, what will Mr. Carr be saying? How is Mr. Carr going to be able to explain some of these issues? We know that the government was able to shade the interaction that Mr. Carr and Curry had with their prior beginning of the process that Mr. Curry had discussed, the content of that communication back in 2017, prior to his testimony. And we know that that particular event, that transaction, the circumstances surrounding that August bust of Mr. Newberry, the pharmacy employee who was transferring and transmitting the opioid medications from C.C. Pharmacy III to the primary office in Houston, are the most persuasive evidence in the record of Mr. Carr's knowledge of the criminal conspiracy. And how that particular exchange was described and how Carr reacted to it are essential to really tying that in and saying, okay, fine, maybe you did think that Rita was working for an in-home care facility. Maybe you did think that this was above board and legal. Maybe Curry didn't explicitly tell you that this was an illegal activity, even if it was frowned upon because it's not industry standard. But you did drive to Round Rock to put that DEA 222 on the fax machine. And you did that because you were trying to cover your tracks. You were trying not to be implicated. That's certainly one interpretation. But if the Court looks at the recording with Don Lewis, I think we can understand that there is another way of interpreting that event. And in particular, it's — Which recording are we referring to here? Number one, Your Honor. I mean, we talk about the four recordings, but I think most troubling is recording number one, because that is a direct communication between Mr. Lewis, the attorney, and both of the defendants, Curry and Carr. Is that the only one where Lewis actually is recorded? Yes, I believe that's correct, Your Honor. The rest of these issues concern what Carr and Curry were telling employees of the pharmacy about that conversation. So I think that they would be inadmissible because they're discussing privilege matters and how the employees are to implement that. In other words, they're saying, well, our lawyer told us X, Y, and Z, but the lawyer is not actually featured on those recordings, two, three, or four. Precisely. But on one, he's on it. All right. Well, so — Number one is — We're going to focus on that. By the government gaining access to number one, they are now a fly on the wall to the internal conversations about — If the recordings were that important, why didn't you move to exclude them timely? Why didn't you exceed to the filter team's repeated request or admonitions? Are you going to claim this as privilege? What are you going to do about it? I mean, you talked about the record screaming different things. One thing it screams to me is, what in the world were you doing to let the time pass when you had the chance to put the genie or keep the genie in the bottle? I agree with you. It's extremely frustrating, as a trial criminal defense attorney myself, to watch that unfold and not see a clearer indication of the assertion of the privilege or an attempt to claw that out. Well, the government gave the defense every chance to keep these things from being produced to the prosecution, and the defense sat on its rights. It is a little bit more difficult than that, Your Honor, because the timing of it, I think, is something that has to be taken into consideration. The court's ruling on no more continuances in the fall of 2021, coupled with the fact that the court granted the disclosure of these four recordings, despite the fact that it was a designated opposed motion to produce. But you did nothing about it. You had, what, ten days or two weeks where the filter team didn't produce the recordings, because they sensed the same thing. They sensed the district court maybe entered this order in haste and didn't realize that it was an opposed motion. But, again, you did nothing until, what, January of the following year, weeks and weeks later. But some of the reasons why this is significant to us now may not have been apparent at the time that this is taking place. I mean, in particular, it wasn't until January. It was the linchpin of the theory of the case, which is what I apprehend Mr. Carr to be arguing, i.e., it gave the government the inside scoop and they were a fly on the wall, whatever it is. I mean, you knew that at the time? Well, I think that it's important to understand, number one, it isn't until January that we have a disclosure that one of the four recordings is actually going to be on the government's exhibit list. Two, we have to understand that we're talking about four recordings, plus there's about 75,000 pages of documents that were produced to the prosecution team that weren't, you know, numbered in an appropriate way to determine whether they're part of what the filter team is actually concerned about as privilege or not. That issue is being resolved at the same time. And the government is telling the defense in January that they have discussed the content of recording number one with Dustin Curry. Isn't it also true that Carr did not timely object to the exhibit list? That actually may well be true, Your Honor, yes. I think that there are a series of issues regarding timing in the case. Of course, the government also had some timing issues of its own in the case. One of the reasons why the full panoply of documents that the taint team thought could be produced weren't able to be used by the government is because the motion to have those materials turned over was also untimely filed. And I think you can see that kind of King-Solomon-type splitting-the-baby approach in the judge's reasoning at the motion's hearing. I guess the question I was following up on was what Judge Wilson asked you about, was when it became apparent to Carr that these recordings were going to be important and you suggested that when it became known that the government was going to seek to use those recordings by listing them on its exhibit list, and yet Carr filed no objection to the motion. Well, different people are going to hit the brakes at different times, and that's a matter of personal judgment and of the lawyer's judgment. But isn't this a matter of the court's judgment as well, as far as, I mean, we're reviewing whether this motion should have been entertained for an abuse of discretion? Well, yes, we're reviewing it. Isn't that the important judgment call here? Well, the idea to me that Rule 12 should be used in such a way to preclude a litigant from making an argument that is as essential to the fairness of the case. It didn't preclude them from making it. What the court found is that they were precluded from making it on an untimely basis. Well, on an untimely basis. There's a big distinction there. But it's a question of the court gave leave to the defense to file objections to the exhibits because there were concerns about privilege. So the court is recognizing in that instance that this is important timing aside, right? Scheduling is one thing, but there are rights affected by this. I'm going to let you file your objections. And then when it comes down to how those objections are going to be articulated, the fact that some of those objections have to raise the specter of dismissal because of a Sixth Amendment claim, then the court chooses to exercise its discretion in a different direction and say, no, I'm going to preclude you from making the argument. So the defense is allowed to make some objections, albeit untimely, as Judge Schroeder has pointed out, but not others. And I think that that's the issue here. The complaint implicates a fundamental right. And we're going to kind of parse how that complaint is actually going to be addressed so that what we're left with is just, okay, fine, you can make an evidentiary objection that recording four was on the exhibit list. I'll let you do that. And I'll let you brief that. But I'm not going to let you make a constitutional claim that's tied to the same piece of evidence. That strikes me as the sort of flight of fancy that might be, well, an abuse of discretion. Especially when the government has been trickling this information out over a very long period of time. I mean, we're talking months here where some of the material is being produced and some of it isn't. The way that the government gives some of the written documentation that also has privilege concerns was problematic for the defense. And I think it's also important to remember when we talk about the delay that the defense engaged in in terms of how it was asserting this privilege, that we're talking about two different camps within the government. We have our team issue with Washington, D.C., and we have the prosecution on the ground that will actually be trying the case. And so I think that that creates its own set of problems, right? I mean, the government reaches out to the defense and says, do you intend to assert privilege? And the defense responds in relatively swift fashion about that. Yes, we intend to assert privilege. It's not but a few days later that the trial court sets its scheduling order that is restrictive on whether continuances will be entertained in the future. It says after October, I think, 7th or something like that, we will not entertain any future continuances. When the judge gives his final scheduling order that sets the December 1st deadline, that was set on November 10th. The recordings come into the possession of the prosecution on November 16th based on, I think, the November 1st ruling, which, as we've discussed, the court made unaware of the fact that it was opposed. So the amount of time before the deadline elapses is not as significant or gaping as it might otherwise appear. And I think that that has to be kept in mind here. The argument that I set forth in my initial briefing is that we would essentially, we've turned Rule 12 here into something that requires a prospective waiver of the right. And while there are some things in the ordinary administration of a trial where I could totally see that that would be justified, for a claim as severe as an intrusion into the attorney-client privilege that implicates Fifth and Sixth Amendment rights, I think that that's a bridge too far, especially when the court— Well, remind me whether the district court ruled that any of the purportedly privileged communications were not privileged because of the crime-fraud exception. Yes. I think that what we have to ask here is, when we talk about crime-fraud, we're talking about whether or not there is a prima facie case that establishes that the criminal activity is taking place, and whether or not the communication is in furtherance of that criminal activity. And I don't think either prong of that test has been satisfactorily met here. They're using this piece of evidence to establish Carr's liability in the conspiracy. That we can't use the thing in itself to establish the applicability of crime-fraud. And while I'm not suggesting that this is a record where there just isn't much evidence at all of guilt, I mean, obviously, the government did a very powerful and persuasive job of showing C.C. Pharmacy was a criminal enterprise. I do think that Carr's involvement as the cross-examination developed was still very much in doubt at that point in time where the government was offering the evidence. But that's why they're doing it. I mean, this is a calculated risk. For a case where there is, as the government has said, an overwhelming amount of evidence that something criminal took place, why risk that conviction by introducing an attorney-client communication or dancing around that issue by having Curry talk about what they did and why they did it, when you don't need that information? They needed it because that's what connected Carr to the offense. That shouldn't be the thing that you build the crime-fraud exception around. And is it really in furtherance? If we look at what the conversation was, the conversation was about the regulatory issue of not having an inter-pharmacy transfer paper, right? The lawyer's giving him advice about that. If — I mean, that isn't in and of itself criminal. The lawyer's not telling them to do anything criminal. Which recording are we referring to? Number one, Your Honor. Still number one. Yes. Everything I really am here and concerned about is number one. Just as a parting note on that, I would say that nothing about the communication would really demonstrate that it was in furtherance of it. Curry's shade on that, the problem is that we now put Carr in the Hobson's choice. He has to play a recording where Don Lewis is saying, look, I'm not saying it's not a problematic transaction, but, you know, here's how you would deal with it. So we're going to have the jury hear a lawyer give a legal opinion that there might be criminal implications to this. I think that that's a choice Mr. Carr shouldn't have had to make. I'll reserve the rest of my time for rebuttal. We don't have time for rebuttal. Thank you, counsel. Mr. Hurst? Thank you, Your Honor. May it please the Court, Ben Hurst for the United States. The District Court properly denied the defendant's motion to dismiss. The motion was untimely, and the defendant did not show good cause for his delay. To show good cause, the defendant needed to show cause and prejudice. The defendant did not show either in this case. The defendant's motion challenged the purported intrusion of the government into attorney-client protected communications in the form of these four recordings. The defendant had all the information and incentive he needed to file his motion well in advance of the motion's deadline. What's our standard of review for good cause? Your Honor, the Court has said that it hasn't stated specifically the standard of review for good cause, although the Court has applied an abuse of discretion review in a case called Dennis, in cases cited therein. So here that wasn't an abuse of discretion because there were, the defendant knew that the information was in the hands of the government. The defendant knew what the contents of the information was. It's a finding the Court made. And the defendant knew that he intended to assert a privilege over that information. And the defendant knew that the filter team was seeking and had received authorization from the District Court to provide that information to the prosecution team, all with almost a month before the pretrial motion deadline had passed. And the defendant at that point didn't file a motion to reconsider the change in authorization, or the authorization from the District Court. He didn't file a motion to extend the pretrial motion's deadline, and he didn't file his motion to dismiss on any of the grounds he's raising today. Our defendant cited several explanations for those, for his delay in this case, but none of them rise to the level of cause. First, the defendant notes the death of his attorney, but there's just no relationship between that and the causes that he's citing for his failure to file the motion on time. The defendant noted several times the motion filed by the filter team and the issue with the, whether it was opposed or unopposed. It's important to recognize that the District Court found that the filter team complied with the local procedure and had no intent to mislead the court. And furthermore, it, any confusion about that, that may have been there on the part of the court, is not relevant to the question of whether the defendant had cause to delay. What's relevant there is that the defendant knew he had opposed, that he opposed the motion, and there, but didn't file his motion on time. And so he wasn't waiting for the, for the government to tell him what his Lastly, the defendant cites several things that came up after the filing, after the pretrial motion's deadline. But that sort of presumes that there was no basis to file the motion ahead of time. The issues the defendant is raising here today are all issues that came up ahead of time. And although he cites the government's use of the materials in preparation for trial, that's an implied result of the filter team's motion to release those documents or those recordings to the prosecution team. That's something he could have foreseen. But furthermore, that, that, those events took place was a fact that was in some way related to the defendant's failure to file his motion on a timely basis. If he had filed his motion by the deadline, he could have sought sequestration of those materials, could have prevented the district court, could have prevented the filter team from transferring them to the prosecution team, or could have, after the prosecution team had received them, prevented the prosecution team from using them even on an interim basis while the district court considered his motion. Lastly on that point, the defendant should not be able to benefit by getting a greater remedy through a motion to dismiss as a result of these, these uses of these materials than he could have gotten if he'd filed his motion in a timely basis. If he had filed his motion on a timely basis before the materials were transferred or even in time to stop the prosecution team from using them, the most, absolute most he could hope to obtain is suppression of those, not dismissal of the indictment. But here he seeks, because of his untimely filing, to get a benefit that's greater than the benefit he could have gotten, the remedy he could have gotten from a motion to suppress. He seeks to have the, the indictment dismissed altogether. This shouldn't be a benefit that he gets from, from filing on an untimely way. Turning to the question of prejudice, the district court actually ruled on the defendant's motion and then ruled on his motion to reconsider. So he had an opportunity to have his concerns addressed. And those concerns were addressed correctly by the district court. And that brings me to the question of the merits. Unless the court has questions about timeliness,  I'll, addressing briefly the question of the merits, the court should consider this for plain error only. The defendants, because of the defendant's failure to show good cause, but under any standard of review, this court should affirm because the district court didn't make an error, much less a plain one. For three reasons the district court didn't make a plain error. First, defendant doesn't have standing to assert a privilege that belongs to C.C. Pharmacy. A corporation's privilege belongs to the corporation, not to the defendant or not to the individual officers or agents of that corporation. And defendant has, the record clearly shows that the attorney in this case represented C.C. Pharmacy and not any particular person individually. Defendant has not shown here his burden to show that the privilege applies. And to make a separate point about that, the attorney-client privilege is an obstacle to truth-finding. It stands in between the public and the right to every man's evidence. And so it's construed narrowly, and ambiguously construed against the proponent. And here the defendant has just not shown that he had a standing to assert a privilege that belonged to C.C. Pharmacy. Let me ask you this. Tell me if I'm thinking about it the right way. If C.C. Pharmacy possessed the privilege, the argument is Mr. Carr couldn't assert the privilege. It wasn't his to assert. It strikes me that if Carr possessed the privilege, then communicating in the other recordings, 2, 3, and 4, with other people, would that waive the privilege? It may have waived the privilege, Your Honor. It's certainly possible with respect to recording 4, which is a recording that involves Sanchez, the pharmacist at C.C. Pharmacy, 3 seemed to be part of that group. But yes, if that's the position that the defendant were taking, I haven't heard him take that position, but if he were taking that position, I think there would be an argument that communicating it outside of there would have destroyed the confidentiality of the communications and would have rendered the privilege inapplicable. So, but here the defendant is not, is not really even kind of addressing this. And the defendant below, in his briefing and argument to the district court, had asserted that the privilege belonged to C.C. Pharmacy. Well could he have asserted the privilege as a principal of C.C. Pharmacy? Not on his own behalf, Your Honor. So here it's a privilege that he is trying to assert in his own case on, for his own personal benefit. And when a defendant, or when an agent of a corporation seeks to assert a personal privilege with a corporate attorney, they have to make an additional showing the defendant hasn't made here. That the defendant, or the proponent of the privilege, sought out the attorney's advice in his individual capacity, and that he did so on an issue that was not a matter of general business concern for the entity. Here, the conversations are real. This is clearly discussions about the business of C.C. Pharmacy. What if it's blurry? If, if it's a, if it's a close call, Your Honor, I think that it ought to be construed against the proponent of the privilege, unless he can make that showing. And that's especially true here, Your Honor, because the court should be reviewing for plain error. And here where the district court denied the motion, the defendant has not shown, certainly not shown a plain error, a clear or obvious error under this court's precedence. And furthermore, Your Honor, in that, in that vein, even if there were a privilege of C.C. Pharmacy, C.C. Pharmacy, that defendant could assert, the defendant cannot assert a Sixth or Fifth Amendment violation of that as his own personal right, because Sixth or Fifth Amendment rights are personal and not, cannot be asserted vicariously. Turning to the second basis. Could you address the dissolution argument, the argument that because the corporation no longer exists, it's been dissolved, that the privilege no longer exists? Is that a position the government takes? Yes, Your Honor. Although that, that position is sort of secondary to the argument that even if the corporation continued to exist, the defendant could not assert the privilege that belonged to it. But in addition here, there is no privilege that exists for any party because C.C. Pharmacy has been dissolved. Is that a position that is supported by authority from the Fifth Circuit? No, Your Honor. In fact, there are, as we could find, no court of appeals decisions on that particular question going either direction. So could you distinguish the Swindler and Berlin case? Swindler and . . . . . . whether the privilege survives the death of the holder of the privilege. Thank you. It's a different scenario, of course, but I'm wondering why, why it could not be extended to cover a situation like this. Thank you, Your Honor. That, that case, as I understand it, involves a natural person. That's correct. And this case involves a, a corporation. I think the reasoning being that there's no, the reasons that the privilege would have survived the death of a natural person just don't apply when a corporate entity dissolves. There's no goodwill. There's no reputation that needs to be maintained. The evidence, or the basis for the privilege and the reason that the courts tolerate standing in the way of evidence and truth-finding just doesn't exist anymore, which is a little bit different than in the case of a natural person. But the, the, the further point that, that, that I'd extend on that is it's just not a question that really would necessarily drive the court's resolution here because it's not a privilege that the defendant could assert anyway. Turning to the second point, this is a, the majority of the opinions, or the majority of the conversations here couldn't support any arguable claim of privilege at all. They're either not seeking or receiving advice from counsel, or they're about actions taken and actions is, is information that would be covered by the crime-fraud exception. So here, as to the crime-fraud exception, turning, I think my friend here discussed reporting one, turning to that recording. That's a recording that the defendant and his co-conspirators are having that discussion to obtain the return of the drugs that they were unlawfully transferring from C.C. Pharmacy 3 to C.C. Pharmacy. It was for the purpose of finding a way to get those drugs back, the drugs that they were unlawfully transferring. It's clearly related to an ongoing crime or a cover-up of that crime. That's clear, especially when the court considers what happened next. Conversation between Newbery and the defendants about, or Carr and Curry, about placing the form on the printer where it should have been and that he just didn't, Newbery just didn't know he was supposed to have it. And then the trip to C.C. Pharmacy 3 to place that form on the printer where the officers later found it. All of these show that what was going on here was not advice about how we handle something that happened in the past, but really advice about how to commit a cover-up of an ongoing drug trafficking operation. So in that, in turning, I think to the, oh, turning to one point that my friend made about crime fraud, about what can be considered. I just point the court to its opinion in Dyer, which is cited in our brief, where the court considered not just the recordings that were purportedly privileged, but also a letter written by an attorney that was part of the cover-up. Both of those things were things that the court considered. And it's very similarly here. Considering the recordings, considering the context, considering the letter that Carr wrote or the email that Carr wrote to Hanson, the C.C. Pharmacy 3 pharmacist, that's all appropriate. And the district court didn't make an error when it considered the crime fraud exception on the evidence and wouldn't have made an error if it addressed that, reached that same question on a motion to dismiss. I'm turning to the third point here. It's the Sixth Amendment and the Fifth Amendment claims fail even if the defendant could assert a privilege that belonged to someone else. That's because the Sixth Amendment hadn't attached at the time of the conversations in question. Understand defendant making an argument about the benchmark ought to be when the recordings were turned over rather than when the recordings were made. We just, that position is not closely tied to the value that the Sixth Amendment protects, which is to provide counsel to the defendant when the prosecutorial forces of society are arrayed against him and he's faced with the criminal and substantive and procedural criminal aspects of criminal law. It just makes no Sixth Amendment sense to make the Sixth Amendment question turn on how the government is processing its evidence. Always the court has said the Sixth Amendment protection for all attorney-client privilege communications that took place at any time as long as the government finds out about them after the commencement of prosecution. So for that reason that we say the Sixth Amendment presents no obstacle here. Likewise, the Fifth Amendment claim fails because the defendant has not shown outrageous government conduct. The government went to the district court as a filter team, sought permission to transfer these materials over, giving us an argument about why the privilege didn't apply. That's even if there were errors, if there was a mistake, they weren't plain and there's certainly nothing that rises to the level of outrageous government conduct. Turning lastly to the question of prejudice, defendant has not shown prejudice, which is his burden. Even on a preserved error, the defendant would have to show prejudice to the court. Here he hasn't shown prejudice. The government did not introduce any of the recordings at trial. The jury did not hear any of the recordings. And the question of — nor did the government learn any aspect of defense strategy. That the defendant might have raised in the advice of counsel defense was revealed by the defendant himself when he included an advice of counsel instruction and placed the attorney on his witness list. So these were things that the court — and in any event, there would be no prejudice because if the defendant had asserted an advice of counsel defense, he would have waived the privilege, any privilege that might have applied over the recordings. Lastly, as to the question of the overwhelming evidence, here there's no prejudice or even under a preserved error standard, any error would have been harmless because the evidence of defendant's knowledge was overwhelming. A defendant was — just to take a few examples — researching street prices of drugs on the Internet, was drafting a false contract between — to try to convince Curry's father to send them drugs from a pharmacy in Las Vegas. There's a text where he says, we'll give him a fake — you know, we'll give him the address of one of our customers or the phone number of one of our customers and a fake home address. So the — and lastly, there is the cover-up that he participated in, the e-mail to Hanson about what to tell the DEA, that was — all of which was untrue, the e-mail to — or the phone call with Newberry about planting the form and then the actual planting of the form. So for all those reasons, the evidence of defendant's own knowledge and participation was overwhelming. Turning very briefly — the Court has no additional questions about the motion to dismiss, so I'll just cover very briefly the evidentiary issue. On the two questions, for a lot of the reasons we've discussed, the evidence that was introduced was properly introduced and shouldn't have been excluded. I'll just highlight two — one point for the Court on that. Neither of these were recording one or refer at all to the attorney. This is defendant's e-mail to Ms. Hanson telling her what to do and evidence from Curry about planting the form. It's not — none of this — all of this information in here was just the discussion of decisions made or actions taken and wasn't privileged. I see I'm near the end of my time. I'm happy to take questions on Issue 3, but as my friend's prepared to submit that on the briefs, I would be happy to do so also. That's fine, Counsel. Any questions — any further questions? No? Thank you, Counsel. Thank you, Your Honor. We ask the Court to affirm. Mr. Hunter, you have five minutes for rebuttal. The record is not as clear-cut as the government has represented it. The discussion about whether this is a corporate privilege or a personal privilege, the government in its briefing essentially contends that the defense conceded it's purely a corporate privilege. But if you look at that section of the record, 2101, the defense counsel makes an argument that it is a corporate privilege that has not been waived and that it is a personal privilege. Both discussions — I mean, the judge says, well, you know, Mr. Curry's a member of the Corporation, too, and he's up here, and the lawyer in response says, well, one of the privilege holders has not waived his privilege. We maintain, Your Honor, that — Your Honors, this is both a corporate privilege and a personally held privilege. The government maintains that we have to meet a different standard, and they cite Beville for that proposition in order to demonstrate that it has become a personal privilege despite the fact that the attorney was engaged by the LLC. That has not been adopted explicitly in the Fifth Circuit. The Fourth Circuit, I think, has a more workable and flexible test, which is simply a reasonable person standard. Would the individual reasonably believe that they are consulting with an attorney? Also, we need to keep in mind, for the purposes of this record, this is a closely held LLC in which Clint Carr is designated as the sole manager, Carr and Curry are designated as 50 percent members, and Carr financed 100 percent of the startup for the business. The idea that there is some kind of a difference or a conflict of interests that would make the lawyer incapable of providing both personal and corporate advice in this context, I think, strains credulity, particularly when we consider that Mr. Carr's interests and the C.C. Pharmacy's interests in this instance are 100 percent in alignment. And why are they talking on recording number one? I mean, the government says that it's an attempt at cover-up, but they're really not talking about anything related to the operations of a pharmacist or whether it's a criminal enterprise or anything like that. They're talking about the DEA has found drugs that were going to be mailed to your business, and there's no paperwork that supports that transfer. So if we don't clarify that this is part of the same enterprise, that this is all owned by C.C. Pharmacy, and that pharmacists working for the company in one location are sending it to the company in another, we're going to be charged with this explicit transfer of drugs. It's just, I mean, flat-out 841 possession. That issue, irrespective of what's going on behind the scenes, is a discreet concern. And fundamentally, that's not the crime that either of these people have committed. I mean, whether there's a larger conspiracy to distribute drugs is a separate problem. They need advice about whether they have criminal liability for that transfer when it's all by the same pharmacy company. So I think that that issue needs to be addressed. We have standing both for the corporate purpose and for the personal privilege that attaches to it. I think anyone in Mr. Carr's shoes would reasonably believe that. The question that Judge Wilson asked about whether this is a blurry situation, this is not blurry at all. Judge Schroeder, you asked about the issue of whether the privilege survives. I think that's a very interesting question. In the first round, since there isn't leading authority on this one way or the other, the idea that the government can shut down a business and then use that activity as the reason why there is no corporate privilege seems to be a very strange thing for us to explicitly hold. Well, if your theory is both and, it doesn't matter anyway, because I guess a personal privilege would have survived. Correct. Correct. Remind me again, what is your case law to support the idea that it could be dual, personally held as well as for the company? Well, the government cites De Beville. We would call the Court's attention to Underseal v. United States, In re Grand Jury Subpoena Underseal, 415 Fed 3rd, 333. That's a Fourth Circuit opinion from 2005, which talks about a reasonable belief standard, which seems a bit more workable than that. But there's, and mostly it's in large corporation context. Most of these cases are about big companies where the employee is walking into corporate counsel's office and somehow mistakenly believes that he is being represented personally. But that can create a personal privilege. While this Court has not cited Beville, to my knowledge, there is a bankruptcy case out of the Eastern District of Texas, In re Black, in which the Court discusses the Beville standard and essentially goes into greater detail to how individuals can oftentimes, lawyers can find themselves creating a personal privilege even if they didn't intend to in the corporate setting. So it's not an unheard of principle. Thank you all for your consideration. Thank you for a well-argued case on both sides. The matter is under submission.